# Wytheville

D. M. TURNER v. FIRST NATIONAL BANK OF BROADWAY.

June 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*C. W. Bennick* and *F. S. Tavenner,* for the plaintiff in error.

*C. R. Winfield,* for the defendant in error.

CAMPBELL, C. J.,* delivered the opinion of the court.

This action by notice of motion was brought by the plaintiff, First National Bank of Broadway, to recover of the defendant, D. M. Turner, the principal sum of $1,150, alleged to be due by reason of the execution by defendant of a negotiable note payable to plaintiff. The note in suit was dated February 15, 1934, and purported to be in renewal of a preceding note for the sum of $1,200, executed by A. M. Turner (a brother of defendant), as maker, and endorsed by defendant.

The record discloses that both defendant and his brother, A. M. Turner, had since the year 1915, been depositors and borrowers of the plaintiff bank; that in the execution of the notes on which money was obtained, defendant was alternately maker and endorser, though it appears that A. M. Turner was the actual beneficiary.

The records of the bank show that the relation of debtor and creditor had its origin on February 8, 1915, by the execution of a note for the sum of $800. The proof then shows that there were numerous notes executed, upon which the name of defendant appeared.

It is the contention of the bank that the note for $1,150 was executed by defendant, with full knowledge that it was a renewal of a former note. Defendant contends that he did not authorize his brother to append his name to the $1,200 note, and that when he executed the $1,150 note, he thought it was a renewal of the $800 upon which he was liable, and which, as stated, was originally executed in the year 1915; that his execution of the $1,150 was obtained by fraud and was never intended as a renewal of the curtailed $1,200 note.

There was a trial by a jury, which resulted in a verdict for the defendant. Upon motion of plaintiff, the trial court set the verdict aside and entered judgment in favor

*Due to circumstances over which we had no control, it was necessary to re-assign the writing of this opinion. This accounts for the delay in the decision.

of the plaintiff. To that action of the trial court defendant obtained this writ of error.

We do not deem it necessary to advert to the numerous decisions of this court dealing with the familiar doctrine of the weight to be given the verdict of a jury upon a conflict of evidence, for the reason that, in our opinion, the record fails to disclose any real conflict in the evidence. The burden was upon the defendant to support his defense of fraud in the procurement of the contract by a preponderance of the evidence.

The trial court and counsel recognized this well-established doctrine when, without objection, .this instruction was given:

"The court instructs the jury that every negotiable note is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon, to have become a party thereto for value. When a defendant who has executed and delivered a negotiable note sets up as a defense, the claim of fraud, or lack of consideration, the burden is on such defendant to prove by a preponderance of the evidence the making of false representations on the part of the plaintiff, that induced the defendant to execute the note, or that there was no valuable consideration for the execution of the note."

In our opinion, no good could follow the setting forth of defendant's evidence in chief, in view of the fact that the cross-examination of defendant discloses the crux of the matter. When confronted with the $1,200 note upon which his name appeared as endorser, though allegedly put there by his brother, and fully aware of the fact that his brother had become a bankrupt and might become seriously involved otherwise, defendant executed the note of his own accord. This is borne out by the following testimony:

"In April, 1931, when called on by the bank to renew the note I was under the impression it was the $800 note. I have no knowledge of endorsing this note for $800, but once in February, 1915. The banker informed me that

I had been endorser formerly on the $1,200 note. Explained to me that I had endorsed the accommodation note; that I had endorsed it as an accommodation note. No notice of maturity was sent to me. I had no knowledge of the note until March, 1934. I never requested that notice of maturity be sent to Adam. *After I saw it was not my genuine signature on the $1,200 note* I executed $1,150 note." (Italics added).

Our conclusion, therefore, is to affirm the judgment, for the same reason which actuated the trial court, that is, because the defendant has failed to sustain the burden of proof.

*Affirmed.*